POSTED ON WEB SITE

FILED
JUL 12 2005
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    ) Case No. 05-10959-B-7
                                         )
Kenold Prince,                           ) DC No. UST-1
                                         )
           Debtor.                       )
_____)

**MEMORANDUM DECISION RE UNITED STATES TRUSTEE'S
MOTION FOR DISMISSAL PURSUANT TO 11 U.S.C. § 707(b)**

Jeffrey J. Lodge, Esq., Office of the United States Trustee appeared for Sara L. Kistler, United States Trustee ("UST").

Frank P. Samples, Esq., appeared for respondent, Kenold Prince (the "Debtor").

The United States Trustee's Motion for Dismissal Pursuant to 11 U.S.C. § 707(b) (the "Motion") was heard on June 7, 2005. The court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334 and 11 U.S.C. section 707. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(a). This Memorandum contains the court's findings of fact and conclusions of law. For the reasons set forth below, the court is persuaded that the granting of a discharge in this case will be a substantial abuse of chapter 7. Accordingly, the United States Trustee's Motion will be GRANTED.

**Applicable Law.**

Section 707(b) of the Bankruptcy Code provides for dismissal of a chapter 7 case in pertinent part as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. *There shall be a presumption in favor of granting the relief requested by the debtor.* . . . (emphasis added.)

In order to dismiss a case pursuant to section 707(b), a court must find that the debts are "primarily consumer debts" and that the granting of relief to the debtor, a chapter 7 discharge

would be a "substantial abuse" of chapter 7. *Zolg v. Kelly III (In re Kelly)*, 841 F.2d 908, 913-14 (9th Cir. 1988).

Section 101(8) of the Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." While the Bankruptcy Code does not define the term "primarily consumer debt," the United States Court of Appeals for the Ninth Circuit has held that the "primarily" standard is met when more than half of the dollar amount owed, including the home mortgage, is consumer debt. *Id.* at 913.

Similarly, the Bankruptcy Code does not define the term "substantial abuse." Nor have the courts prescribed a clear standard for making the "substantial abuse" analysis. The Ninth Circuit has held that a debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the *primary factor* to be considered in the "substantial abuse" analysis. *Id.* at 914. "[A] finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." *Id.* at 915. However, the "ability to pay debts" test is not the end of the inquiry. *Kelly* did not establish an absolute *per se* rule. *Price v. United States Trustee (In re Price)*, 353 F.3d 1135, 1140 (9th Cir. 2004). Based on the language of § 707(b) and the legislative history, the Ninth Circuit subsequently recognized that, "the debtor's ability to pay his or her debts does not *compel* a section 707(b) dismissal of the petition as a matter of law." *Id.*

"Congress committed the question of what constitutes substantial abuse to the discretion of bankruptcy judges within the context of the Code." *Id.* The Bankruptcy Code specifically uses the term "substantial" to qualify the term "abuse" which suggests that dismissal under section 707(b) requires more than a simple balancing of the equities. While the "ability to fund" a hypothetical chapter 13 plan may support a finding of substantial abuse, the Ninth Circuit's use of the term "primary factor" in *Kelly* suggests that the "ability to fund" a chapter 13 plan is not the only factor to be considered. The court in *Kelly* also cited legislative history which recognized that "'if a debtor can meet his debts *without difficulty* as they come due, use of Chapter 7 would represent a substantial abuse.'" (emphasis added.) Kelly, 841 F.2d at 914 (*citing* S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)). The terms "substantial," and "without difficulty" both suggest that other factors should be considered by the court in the exercise of its

discretion. Those concepts are each subject to numerous considerations.

Recognizing the need for flexibility, the Ninth Circuit employed a "totality-of-the-circumstances" analysis in *Price*, which looks to factors such as,

>  (1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
>
>  (2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
>
>  (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
>
>  (4) Whether the debtor's proposed family budget is excessive or extravagant;
>
>  (5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
>
>  (6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*Price*, 353 F.3d at 1139-40.

Based on the foregoing, this court will apply a totality-of-the-circumstances analysis to the UST's Motion giving primary consideration to the Debtor's ability to fund a chapter 13 plan. In other words, the court must determine that the *total picture* is substantially abusive.

**Burden of Proof.**

The Ninth Circuit does not address the burden of proof in *Kelly*; however, it does refer to the chapter 13 "Disposable Income Test" under 11 U.S.C. § 1325 as the "primary factor" of a substantial abuse analysis. To confirm a chapter 13 plan, the debtor has the burden of proving that all of the requirements of section 1325 have been met. *Amfac Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982): *See also Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349 (9th Cir. BAP 1997). However, section 707(b) is clear that there shall be a presumption in favor of granting the debtor a discharge.

>  [T]he presumption is in reality a caution and a reminder to the bankruptcy court that the Code and Congress favor the granting of bankruptcy relief, and that accordingly "the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present."

*Kelly* 841 F.2d at 917, *citing 4 Collier* § 707.08, at 707-19.

The presumption may be overcome by a showing that the debtor has the ability to repay

debts or the presence of other factors indicating dishonesty or lack of need. *In re Mastromarino*, 197 B.R. 171, 177 (Bankr. D.Me. 1996). The presumption vanishes entirely upon a showing that the debtor's schedules do not accurately portray the debtor's ability to pay. The matter then becomes an ordinary question of fact. *Id.*

The burden of proof and burden of production in a motion to dismiss for substantial abuse rests with the moving party. *6 Collier on Bankruptcy* (15 Ed. Revised.) ¶ 707.04 [5][a], pg. 707-26). Unlike the chapter 13 plan confirmation process, a chapter 7 debtor is not required to prove that his/her discharge meets any statutory standard. The UST has the burden of producing evidence to support a section 707(b) motion. *Harris v. U.S. Trustee (In re Harris)*, 279 B.R. 254, 260-61 (9th Cir. BAP 2002). Even when the debtors fail to oppose the 707(b) motion, they still retain the benefit of the statutory presumption in favor of their discharge and the court must independently review the evidence presented to determine if that presumption has been sufficiently rebutted.

**Analysis.**

**The Debts are "Primarily Consumer Debts."**

The first element of the 707(b) analysis appears to have been satisfied and the Debtor does not contend otherwise. The front page of the Debtor's petition states that his debts are "Consumer/Non-Business." The Debtor has no outside business activity. The scheduled secured debts relate to consumer purchases. The scheduled unsecured obligations appear to be based on personal credit cards and other consumer debts. Since more than half of the dollar amount owed is consumer debt, the Debtor has "primarily consumer debts" within the meaning of section 707(b).

**The Chapter 7 Discharge Would Be a Substantial Abuse.**

The difficulty with this case lies with the Debtor's schedules. Even as amended, they appear to be materially inaccurate and they do not give a full picture of the Debtor's financial condition and activities. In that regard, the Debtor is not entitled to the statutory presumption in favor of a discharge. *Mastromarino, supra*, 197 B.R. at 177.

The Debtor has worked 22 years for the U.S. Department of Defense. He enjoys a

comfortable income. The Debtor's schedules I & J, both original and amended, state that the Debtor has a monthly gross wage of $5,846 without overtime. However, the UST has produced copies of the Debtor's most recent payroll records for 2005 which show that the Debtor's basic pay (without overtime), plus a "locality adjustment" totals $6,562 per month ("78,745 annual pay ÷ 12 months"). This discrepancy in gross pay alone ($716 per month) would pay a substantial portion of the Debtor's unsecured debts, over 36 months through a chapter 13 plan.

The amended schedules show that the Debtor makes voluntary contributions to the Federal Thrift Savings Plan which total in excess of $600 per month. Participation in the Thrift Savings Plan is not mandatory and this money should be available to pay creditors before the Debtor funds his retirement plan. *In re Fountain*, 142 B.R. 135, 137 (Bankr. E.D. Va. 1992).

The UST offered into evidence a copy of the Debtor's income tax return for 2004. In that document, the Debtor reported "Other Income" in the nature of "Gambling Winnings" in the amount of $3,089 for 2004. This "other income" is not disclosed in the Debtor's schedules,[1] neither is there any disclosure as to how much money the Debtor spends (or loses) on his gambling activities. Gambling is an extravagant hobby for one who has the financial difficulties asserted by this Debtor. Any money which the Debtor spends on gambling, even recreational gambling, should first be made available to pay creditors. The creditors should not have to fund the Debtor's expensive hobbies. *In re Moffatt*, 2005 WL 1388979 (Bankr. D.N.D. 2005).

Finally, the court is puzzled by a statement which the Debtor makes in paragraph 3 of his opposing declaration regarding the use of his bank account and the payment of ATM fees:

> I do not write checks to pay my bills but I draw cash out of my accounts at cash machines and pay cash for most of my expenses. I expend about $50.00 each month on ATM charges where withdrawal charges are denied. I spend hundreds of dollars each month for withdrawal charges and $23.00 each time there is a "courtesy pay." I do not know that is for.

The court notes first that these "ATM charges" are not disclosed in the Debtor's

---

[1] Question No. 2 on the Statement of Financial Affairs asks for a disclosure of "Income other than from employment or operation of business" for the two years immediately preceding commencement of the case. In response to this question on the amended Statement of Financial Affairs, the Debtor answered "None."

5

schedules as either an expense item or other form of transfer. Second, this statement, if true, suggests that the Debtor is literally wasting "hundreds of dollars each month" on ATM withdrawal fees which could and should be used to pay his creditors. The Debtor's schedule B lists both a checking and a savings account with minimal balances at an undisclosed bank. It is not clear to the court why the Debtor does not use the checking account. It is further disconcerting to the court that a person who has been employed for 22 years, earning a good stable income in a high technology job with the Department of Defense, can't or won't properly maintain and use a checking account for the management of his financial affairs and the payment of his routine expenses. However, the Debtor's professed inability to responsibly manage his financial affairs, and his reliance on this obvious shortcoming as a defense to the UST's motion, further support the UST's argument that a discharge in this case will be a substantial abuse of chapter 7.

**Conclusion.**

In conclusion, it appears to the court that this Debtor has "disposable income" which could be made available to substantially pay his unsecured creditors through a chapter 13 plan and that he has not been completely candied with regard to disclosing both his income and his financial activities.

Based thereon, and considering the totality-of-the-circumstances, the court finds and concludes that the discharge of this Debtor in chapter 7 will be a substantial abuse. Accordingly, the United States Trustee's Motion for Dismissal Pursuant to 11 U.S.C. § 707(b) will be GRANTED.

Dated: July __12__, 2005

_____
W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Kenold Prince<br>212 Desert Candles<br>Ridgecrest CA 93555 | Frank P. Samples<br>1331 L St<br>Bakersfield CA 93301 | Randell Parker<br>3820 Herring Rd<br>Arvin CA 93203 |
| US Trustee<br>1130 O St Rm 1110<br>Fresno CA 93721 | Jeffrey Lodge<br>1130 O St Rm 1110<br>Fresno CA 93721 | |

DATED: July 12, 2005          By: _____
                                    Deputy Clerk

EDC 3-070 (New 4/21/00)